IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,743

STATE OF KANSAS,
*Appellant*,

v.

SETH COLLINS,
*Appellee.*

SYLLABUS BY THE COURT

1.

Probable cause is the standard used to decide whether a defendant is entitled to immunity from criminal prosecution under K.S.A. 2019 Supp. 21-5231, which is the statute broadly encompassing justifications for using force to defend people or property. The State bears the burden to establish probable cause that defendant's use of force was not statutorily justified when a defendant invokes the statute.

2.

The term "probable cause" is described and applied in our caselaw somewhat differently depending on the context. For purposes of K.S.A. 2019 Supp. 21-5231, the State establishes the probable cause necessary to defeat a pretrial motion for immunity if the district court's factual findings are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt despite the defendant's claim of justified use-of-force immunity.

3.

To decide a defendant's motion for immunity from criminal prosecution under K.S.A. 2019 Supp. 21-5231, a district court must consider the totality of the

1

circumstances, weigh the evidence before it without deference to the State, and determine whether the State carried its burden to establish probable cause that defendant's use of force was not statutorily justified.

4.

A district court's probable cause fact finding under K.S.A. 2019 Supp. 21-5231 must be premised on: (a) stipulations of the parties, evidence received at a hearing under the rules of evidence, or both; and (b) the reasonable inferences to be drawn from any stipulations or the evidence.

5.

The process envisioned by K.S.A. 2019 Supp. 21-5231 for determining whether the State met its burden of establishing probable cause will usually require a district court to hear and resolve conflicting evidence when making its factual findings. The district court's legal conclusions in deciding whether the State established probable cause must be supported by those factual findings.

6.

Under K.S.A. 2019 Supp. 21-5231, the State can defeat a pretrial motion for immunity by establishing probable cause that the defendant's use of force was not justified in accordance with K.S.A. 2019 Supp. 21-5222 under either or both of two scenarios: (a) the defendant did not honestly believe the use of force was necessary under the circumstances, or (b) a reasonable person would not believe the use of force was necessary under the circumstances.

7.

Under K.S.A. 2019 Supp. 21-5231, the State can defeat a pretrial motion for immunity by establishing probable cause that the defendant was engaged in a forcible

felony or initially provoked the use of force under the conditions set out in K.S.A. 2019 Supp. 21-5226(b) or (c).

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 140, 425 P.3d 630 (2018). Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed April 24, 2020. Judgment of the Court of Appeals reversing the district court and remanding the case is affirmed. Judgment of the district court is reversed, and the case is remanded.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: The lower courts disagree over the defendant's entitlement to statutory self-defense immunity after he drew a knife during an altercation with three unarmed women that ended with one dead and another seriously injured. The district court dismissed second-degree murder and reckless aggravated battery charges, ruling Seth Collins had reasonable grounds to believe he was in danger of great bodily harm. A Court of Appeals panel reversed and remanded the case for further district court proceedings. *State v. Collins*, 56 Kan. App. 2d 140, 149, 425 P.3d 630 (2018) ("[T]o overcome a defendant's immunity claim, the State does not need to *prove* that the defendant's use of force was not justified; it merely has to establish probable cause that the defendant's use of force was not justified."). We agree with the panel.

We hold Collins is not entitled to immunity from prosecution under K.S.A. 2019 Supp. 21-5231. On the facts as found by the district court, there is probable cause to

believe Collins' use of force was not statutorily justified. To explain this, we parse the escalating sequence of events comprising the deadly encounter by breaking it down into discrete uses of force of varying degrees. And by examining each forceful act in context, we conclude the State met its probable cause burden by showing that an ordinarily prudent and cautious person could conscientiously entertain a reasonable belief Collins was not privileged to apply deadly force. That was all the State had to do at this pretrial juncture. See K.S.A. 2019 Supp. 21-5231(c) ("A prosecutor may commence a criminal prosecution upon a determination of probable cause."); see also K.S.A. 2019 Supp. 21-5231(a) ("As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.").

Whether Collins' conduct, as alleged by the State, was justified under the self-defense statutes must be decided at a trial under our statutory scheme.

FACTUAL AND PROCEDURAL BACKGROUND

Our focus is on two incidents on the same evening at an apartment complex involving Collins and his neighbors. In the first incident, Collins suffered multiple head and body injuries. In the second, Kayla Brown died from stab wounds inflicted by Collins with a foldable knife that had a 4.5-inch handle and "slightly less" than a 4-inch blade. Kayla's twin sister, Shayla Brown, suffered a serious stab wound to her bicep. At the time, Collins was 38 years old, 5'11" tall, and weighed about 250 to 255 lbs. Shayla was 22 years old, 4'11" tall and weighed about 113 lbs. Kayla was the same height as Shayla but weighed about 10 lbs. less. The State charged Collins with second-degree murder for killing Kayla and reckless aggravated battery for stabbing Shayla. See K.S.A. 2019 Supp. 21-5403(a)(1); K.S.A. 2015 Supp. 21-5413(b)(2)(B).

4

Collins filed a pretrial motion to dismiss the State's charges claiming self-defense immunity. See K.S.A. 2019 Supp. 21-5222 (self-defense theory); K.S.A. 2019 Supp. 21-5231 (immunity from prosecution). The district court conducted a three-day evidentiary hearing, during which the parties presented testimony and statements from several witnesses, including Collins, other participants in the conflict, and outside observers. The district court agreed with Collins and dismissed the case.

We recite the facts as found by the district court in its order granting Collins self-defense immunity because our standard of review preserves factual findings supported by substantial competent evidence. See *State v. Hardy*, 305 Kan. 1001, 1012, 390 P.3d 30 (2017). When necessary, we quote from the district court's order.

*The two incidents*

The first incident began on the night of April 30, 2016, when Collins drove back to his apartment with his two daughters. He tried to park near a vehicle occupied by Luz Toral. Shayla was outside the vehicle talking to Toral. Collins believed Shayla was obstructing the parking spot. He "made negative comments" towards the women and drove away.

After leaving his vehicle in guest parking, Collins and his daughters walked to his apartment building. Another verbal exchange ensued between Collins and Toral. Collins' daughters kept walking toward his apartment. Shayla and Kayla got involved. Collins "clearly received and delivered numerous verbal insults" including some that were "racist, vulgar and inciting." A physical altercation broke out that Collins "started . . . by pushing himself physically up to Ms. Toral in the parking lot." Kayla, Shayla, "and possibly others joined in against" Collins. At that time, his daughters called 911. Trishall Dear, the twins' mother, arrived in the parking lot and calmed the situation. Collins went

5

into his apartment, having "sustained significant external injuries to his face, head and other portions of his body . . . ."

About 10 minutes later, the deadly second incident began when Collins returned to the parking lot to look for his glasses. Kayla, Shayla, and Dear were still outside. Collins, Shayla, and Kayla reengaged in a verbal quarrel with more insults. After Collins found his glasses, he had more words with the twins and walked back toward his apartment. As he passed Dear, who was standing near the door into the building, he "quietly stated something derogatory" to her.

The district court found there was no physical contact between Collins, Shayla, Kayla, and Dear up to this point of the second incident. But the court commented there was

> "evidence that Mr. Collins . . . verbally provoked Kayla and Shayla . . . while in the parking lot during the second encounter when he looked for and located his glasses. Mr. Collins was still verbally 'provoking' when he made a negative comment to Ms. Dear as he went by her on the way back into the building. Yet, the totality of the evidence does not support a finding that physical force was provoked by Mr. Collins during the second encounter."

Dear followed Collins into the building. Her daughters started after them. Collins walked up a nine-step staircase. As he approached the top, "all three ladies [were] very close (just a step or two) behind him and he look[ed] back at them." The district court characterized this moment elsewhere in its order as the women "confront[ing him] from behind in a very aggressive way" and noted "it [was] apparent from the evidence [the twins] intended to physically punish him for the way he had treated them and their mother."

6

Then, the court found:

"As Mr. Collins gets to the top of the first flight of stairs, he turns towards the three ladies immediately behind him and displays a knife. The testimony indicates that Collins initially held the knife in his right hand; with the blade open; with the blade pointing up; and he held it about shoulder to head-high next to him.

"While the precise details concerning these few key seconds vary significantly, the evidence indicates that within moments of Mr. Collins displaying the knife, Shayla Brown grabbed the back of his shirt collar and pulled him back towards her, her sister and her mother. In the next few moments, Mr. Collins, Shayla, Kayla, and Ms. Dear all fell back down the staircase.

. . . .

"No evidence was presented to clearly indicate who was stabbed first or the exact location of Kayla or Shayla at the time they were stabbed. The evidence is clear that Shayla Brown was stabbed on her left bicep and Kayla Brown sustained a fatal stab wound on the left side of her neck.

"Once at the bottom of the stairs Shayla held Mr. Collins down momentarily and Mr. Collins still had the knife. Once Ms. Dear saw how seriously wounded Kayla was . . . she went to aid Kayla. Shayla then released her hold on Mr. Collins to assist her mother and sister.

"Mr. Collins gets up, folds up his pocket knife and goes back up the stairs to his apartment."

The district court did not clearly address how Kayla and Shayla were stabbed, but Collins testified he "start[ed] waving the knife" as they all tumbled down the stairs. He

7

denied using "precision stabs or cuts" or "looking at exactly where the knife [was] going."

After analyzing the applicable statutory provisions, the district court dismissed all criminal charges. It explained,

> "The court has considered the totality of the circumstances and weighed much conflicting evidence. The evidence presented does not establish probable cause that Mr. Collins' use of force was not justified under the statutes applicable to this case. Based upon these statutes and the recent case law cited herein, Mr. Collins is not subject to criminal prosecution for the tragic death of Kayla Brown or the injuries sustained by Shayla Brown."

The State timely appealed, arguing it had established probable cause that Collins' use of deadly force was not necessary to prevent great bodily harm to himself. See K.S.A. 2019 Supp. 21-5222. It also argued Collins' use of deadly force was not statutorily justified because he was the initial aggressor in the stairwell incident under K.S.A. 2019 Supp. 21-5226. A Court of Appeals panel reversed.

The panel acknowledged the district court faced conflicting evidence but concluded the court applied the wrong legal standard. *Collins*, 58 Kan. App. 2d at 152. It reasoned that the district court erred by deciding what a jury was supposed to decide, i.e., "whether Collins was justified in his use of deadly force in self-defense." 56 Kan. App. 2d at 152. As the panel explained, "[t]he State's burden in overcoming Collins' immunity claim was simply to establish probable cause that his use of deadly force in self-defense *was not* justified." 56 Kan. App. 2d at 152. In the Court of Appeals' view, "[U]nder the facts in this case, and because it is such a close call, conceivably both could be true." 56 Kan. App. 2d at 152. The panel also concluded that even if the district court had applied the correct legal standard to the evidence, the facts as found by the district court did not

8

support a grant of immunity. The panel did not expressly decide the aggressor issue under K.S.A. 2019 Supp. 21-5226.

Collins petitioned this court for review. The State conditionally cross-petitioned for review on the panel's failure to decide whether the State met its probable cause burden to demonstrate Collins was the aggressor at the time of the fatal stabbing and initially provoked the use of force. We granted review on all issues.

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Under Kansas' self-defense immunity statute,

"(a) A person who uses force which, subject to the provisions of K.S.A. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.

. . . .

"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2019 Supp. 21-5231.

The district court plays a critical role in the pretrial processing of immunity claims under the statutory scheme laid out by the Legislature. *Hardy*, 305 Kan. at 1010. K.S.A. 2019 Supp. 21-5231 confers a "true immunity" for those who qualify. This means the law carries with it "the necessity of a procedural gatekeeping function, typically exercised by a detached magistrate, who will prevent certain cases from ever getting to a trial and a jury." *Hardy*, 305 Kan. at 1010. And that gatekeeping is triggered—as it was here—by a defendant's pretrial motion to invoke immunity under K.S.A. 2019 Supp. 21-5231. This motion imposes on the State the burden to come forward with probable cause to show the defendant's use of force was not statutorily justified. *Hardy*, 305 Kan. at 1011.

At this pretrial stage, the district court's function is to assess the State's probable cause. See K.S.A. 2019 Supp. 21-5231(c). The court decides pretrial immunity motions by considering the totality of the circumstances, weighing the evidence before it without deference to the State, and determining whether the State carried its burden. The district court's probable cause determination must be premised on: (1) stipulations of the parties, evidence received at a hearing under the rules of evidence, or both; and (2) the reasonable inferences drawn from any stipulations or the evidence. In practice, this is a two-step process. First, the district court must make its factual findings. As the *Hardy* court observed, in these contentious self-defense cases a district court usually is tasked with resolving conflicts in the evidence to do that. This first step necessarily is distinct from the second step: the district court must reach legal conclusions as to whether the State met its probable cause burden based on those factual findings. 305 Kan. at 1012.

In *State v. Thomas*, 311 Kan. __, __ P.3d __ (No. 116,111, this day decided), slip op. at 15, we held the district court failed to properly carry out its role in this pretrial

10

motion process when it made no factual findings before reaching its legal conclusion that self-defense immunity applied. In Collins' case, we are not concerned with that type of failure. Instead, we must consider whether the district court applied its factual findings as the statutes require in the second step. And as the panel correctly observed, the State's burden at this juncture was simply to establish probable cause that Collins' use of deadly force in self-defense was not justified. 56 Kan. App. 2d at 152.

The term "probable cause" admittedly has been described and applied differently in our caselaw depending on the context. See, e.g., *State v. Hubbard*, 309 Kan. 22, Syl. ¶ 4, 430 P.3d 956 (2018) ("Probable cause to support a search can be established if the totality of the circumstances indicates there is a fair probability the place to be searched contains contraband or evidence of a crime."); *Hamel v. Hamel*, 296 Kan. 1060, Syl. ¶ 8, 299 P.3d 278 (2013) ("In determining whether a beneficiary has probable cause to challenge the provisions of a will or trust, the term 'probable cause' means the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude there is a substantial likelihood that the contest or attack will be successful."); *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012) (noting probable cause to bind a defendant over for trial "'signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt'"); *In re Burch*, 296 Kan. 215, Syl. ¶ 7, 291 P.3d 78 (2012) ("In order to establish probable cause to justify transitional release, a person committed under the Sexually Violent Predator Act must present facts at the annual review hearing that are sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the person's mental abnormality or personality disorder has so changed that he or she is safe to be placed in transitional release."); *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004) (describing probable cause to support a warrantless arrest as "'the reasonable belief that a

11

specific crime has been or is being committed and that the defendant committed the crime'").

In the self-defense immunity setting, probable cause means that the facts as found by the district court are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of defendant's guilt despite the claim of justified use-of-force immunity. See *Hardy*, 305 Kan. 1001, Syl. ¶ 1 (holding State must establish probable cause that use of force was not statutorily justified to overcome motion for immunity under K.S.A. 2016 Supp. 21-5231); see also *State v. Ultreras*, 296 Kan. 828, 846, 295 P.3d 1020 (2013) (holding State defeated immunity motion because it "offered evidence sufficient for a person of 'ordinary prudence and caution to conscientiously entertain a reasonable belief' of [defendant's] guilt despite his claim of justified use-of-force immunity").

It is important to remember the probable cause burden required by K.S.A. 2019 Supp. 21-5231, like all probable cause determinations called for in various other settings, is substantially less than the proof beyond a reasonable doubt necessary to obtain a guilty verdict. See *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000) ("Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.").

*Standard of review*

An appellate court applies a bifurcated standard of review when considering a district court's probable cause determination on a pretrial immunity motion. The factual findings arising from disputed evidence are reviewed for substantial competent evidence,

12

and the reviewing court will not reweigh that disputed evidence. The ultimate legal conclusions drawn from the facts are considered de novo. *Hardy*, 305 Kan. at 1012.

*Discussion*

It should be conceded upfront that the statutory scheme supplying various justifications for using force, including deadly force, to defend people or property has proven complex, overlapping, and difficult to apply from case to case. This appeal illustrates some of that higher degree of difficulty. So we begin where we always should start, with the statutes.

Self-defense is governed by K.S.A. 2019 Supp. 21-5222, which provides:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

In a case involving the use of deadly force in defense of a person, governed by subsection (b), there is a two-prong test. The first is subjective. It requires a showing that the defendant sincerely and honestly believed deadly force was necessary to prevent imminent death or great bodily harm to the defendant or a third person. The second prong

is objective. It requires a showing that a reasonable person in the defendant's circumstances would have perceived the use of deadly force as necessary to prevent imminent death or great bodily harm to the defendant or a third person. *State v. Macomber*, 309 Kan. 907, 916-17, 441 P.3d 479 (2019).

K.S.A. 2019 Supp. 21-5222 therefore establishes the minimum conditions that must exist for the use of deadly force in defense of a person to be statutorily justified. And a defendant can assert any of the various justifications allowed at an early stage in the proceedings by invoking immunity under K.S.A. 2019 Supp. 21-5231. But the State can overcome a defendant's pretrial immunity motion by establishing probable cause that the defendant's use of force was not justified under either or both of two scenarios: (1) the defendant did not honestly believe the use of force was necessary under the circumstances, or (2) a reasonable person would not believe the use of force was necessary under the circumstances. In other words, if the State shows at least one of these circumstances, the dispute over K.S.A. 2019 Supp. 21-5222's application may become a question for a trial.

Another way the Legislature imposes limits on a defendant's ability to claim the justification described in K.S.A. 2019 Supp. 21-5222 is under K.S.A. 2019 Supp. 21-5226. It provides that immunity is not available to a person who:

> "(a) Is attempting to commit, committing or escaping from the commission of a forcible felony;

> "(b) initially provokes the use of any force against such person or another, with intent to use such force as an excuse to inflict bodily harm upon the assailant; or

> "(c) otherwise initially provokes the use of any force against such person or another, unless:

14

(1) Such person has reasonable grounds to believe that such person is in imminent danger of death or great bodily harm, and has exhausted every reasonable means to escape such danger other than the use of deadly force; or

(2) in good faith, such person withdraws from physical contact with the assailant and indicates clearly to the assailant that such person desires to withdraw and terminate the use of such force, but the assailant continues or resumes the use of such force."

As can be seen, subsection (a) denies the self-defense justification to a person engaged in a forcible felony. And subsections (b) and (c) articulate additional, but separate, bases for denying the self-defense claim when a person "initially provokes the use of any force against such person or another." K.S.A. 2019 Supp. 21-5226(b)-(c). The subsection (b) limitation includes the additional element that the initial provocation be done "with intent to use such force as an excuse to inflict bodily harm upon the assailant." The subsection (c) limitation contains a retreat "safe harbor" that is attainable under specified circumstances to an initial aggressor who lacks the additional element required in subsection (b). See *State v. Beltz*, 305 Kan. 773, 781, 388 P.3d 93 (2017) (determining "the retreat safe harbor exceptions . . . are only available to a defendant falling under subsection [c]").

The State argues Collins' conduct in the stairwell, especially in pulling a knife on the unarmed women, makes K.S.A. 2019 Supp. 21-5226 applicable. In the State's view, if it established probable cause that Collins engaged in conduct that removes the possibility of a self-defense justification under any subsection of K.S.A. 2019 Supp. 21-5226, consideration of the two-part test described above for K.S.A. 2019 Supp. 21-5222(b) is unnecessary.

15

Against this backdrop, the State's appeal presents alternative analytical paths because it contends it met its probable cause burden under either K.S.A. 2019 Supp. 21-5222(b) or K.S.A. 2019 Supp. 21-5226. The panel reached its outcome based on K.S.A. 2019 Supp. 21-5222(b). *Collins*, 56 Kan. App. 2d at 153-54. But its approach tries to tackle a closer question under these facts and carries with it the added risk of reweighing facts, which is inappropriate on review. *Hardy*, 305 Kan. at 1012.

We hold K.S.A. 2019 Supp. 21-5226, the initial aggressor statute, operates conclusively to deny the immunity motion and reverse the district court on that basis. See *State v. Salary*, 301 Kan. 586, 594, 345 P.3d 1165 (2015) (jury instruction case; addressing K.S.A. 2019 Supp. 21-5226[b]'s application first before conducting the two-prong test under the self-defense statute because subsection [b]'s operation was "dispositive").

*The probable cause showing Collins was not justified drawing his knife*

In analyzing the second incident just before the stabbings, we begin with Collins' conduct as he reemerged to retrieve his glasses. The district court found Collins triggered a verbal exchange with the women as he went back to the parking lot and was "still verbally 'provoking'" the women "when he made a negative comment to Ms. Dear as he went by her on the way back into the building." Immediately afterward, according to the district court's findings, the women "very aggressive[ly]" followed Collins up the staircase. This was the first use of force.

To explain this, "'use of force'" for the purposes of the self-defense statutes includes "[w]ords or actions that reasonably convey the threat of force . . . ." K.S.A. 2019 Supp. 21-5221(a)(1)(A). And as the district court found, "it was apparent from the evidence [the women] intended to physically punish [Collins] for the way he had treated

16

them and their mother." Nevertheless, is there probable cause to believe Collins initially provoked this first use of force? The answer is yes.

The initial aggressor statute applies when a person "initially provokes *the use of any force*" against the person—not just physical force. (Emphasis added.) K.S.A. 2019 Supp. 21-5226(b), (c). And the self-defense statutes plainly consider threatening, nonphysical conduct to be "force." See K.S.A. 2019 Supp. 21-5221. The district court took too narrow of a view of the initial aggressor statute when it concluded Collins did not provoke "physical force." Under our statutory scheme, an ordinarily prudent and cautious person could conscientiously entertain a reasonable belief that Collins initially provoked the women's use of force against him when he verbally rekindled the conflict, resuming the same verbal hostilities that just minutes earlier ended in physical violence and injury to Collins during the first incident.

Next, Collins responded with his own use of force—halting the retreat to his apartment at the top of the stairwell, turning to the women, and brandishing the knife. This must be analyzed first under the initial aggressor provisions of K.S.A. 2019 Supp. 21-5226(b) and (c). Importantly, at this point, we are not yet concerned with what happened after Collins brandished the knife, which we will consider below when discussing K.S.A. 2019 Supp. 21-5226(a) (engaging in a forcible felony).

Under subsection (b), use of force is not justified if the person initially provokes the use of force against that person or another, with intent to use the force as an excuse to inflict bodily harm on the assailant. The district court found Collins did not harbor that intent, and we do not find reason to disturb that factual finding.

But under subsection (c)'s retreat safe harbor exceptions, a provocateur's use of force can be justified in only two circumstances. First, under subsection (c)(1), if they

17

have reasonable grounds to believe they are in imminent danger of death or great bodily harm *and* have exhausted every reasonable means to escape such danger other than resorting to the use of deadly force. Second, under subsection (c)(2), if in good faith they withdraw from physical contact with the assailant *and* clearly indicate their desire to withdraw and terminate the use of force, but the assailant continues or resumes it.

An ordinarily prudent and cautious person could conscientiously entertain a reasonable belief—based upon the facts found by the district court—that Collins did not exhaust every reasonable means to escape. See K.S.A. 2019 Supp. 21-5226(c)(1). Collins stopped at the top of the stairs to display his knife to the women, instead of simply continuing to his apartment. The district court concluded "at the point [Collins] stabbed [the victims], [he] had no reasonable means to get away from them" because "[o]ne of them had him by the collar and both were coming upon him aggressively." But this ignored whether Collins' actions leading up to that point were justifiable. This omission was error.

An ordinarily prudent and cautious person could also conscientiously entertain a reasonable belief Collins did not "in good faith, . . . [withdraw] from physical contact with the assailant and [indicate] clearly to the assailant that [he] desire[d] to withdraw and terminate the use of such force, but the assailant continue[d] or resume[d] the use of such force." K.S.A. 2019 Supp. 21-5226(c)(2). The district court viewed Collins' retreat into the apartment building as both his withdrawal and his communication of intent. But this ignores that the same conduct was contemporaneous with Collins' verbal taunting of Dear. And that provoking verbal conduct was similar to what sparked the physical fight with the women minutes earlier. A jury could conclude that what the district court viewed as Collins' retreat was not undertaken as a good faith effort to deescalate the conflict under K.S.A. 2019 Supp. 21-5226(c)(2).

18

*The probable cause showing that Collins was not justified using his knife*

We now turn to the deadly aftermath of Collins' decision to pull out his knife. In the third discernable use of force during the second incident, the women responded by grabbing hold of him. And that instantly led to the fourth use of force with Collins swinging the knife and stabbing and cutting the twins as everyone tumbled down the stairs.

An ordinarily prudent and cautious person could conscientiously entertain a reasonable belief that Collins' lethal reply was not justified, regardless of whether the women were warranted in grabbing him. If they were, Collins' conduct was not justified because self-defense immunity is only available when force is necessary to defend against the "imminent use of *unlawful* force." (Emphasis added.) K.S.A. 2019 Supp. 21-5222(a). And even if they were not warranted in grabbing him, a jury could still conclude Collins was not entitled to self-defense immunity because he initiated the fourth use of force by attempting to commit or committing a forcible felony—aggravated assault. K.S.A. 2019 Supp. 21-5226(a). This is because under subsection (a), a person's use of force is not justified if the defendant is engaged in a "forcible felony."

A forcible felony "includes any treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and any other felony which involves the use or threat of physical force or violence against any person." K.S.A. 2019 Supp. 21-5111(n). Aggravated assault is a forcible felony because it is a felony involving the threat of physical force against a person. See K.S.A. 2019 Supp. 21-5412(a) ("Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm."), (b) ("Aggravated assault is assault, as defined in subsection [a], committed . . . [w]ith a deadly weapon; . . . while disguised in any

19

manner designed to conceal identity; or . . . with intent to commit any felony."), (e)(2) (aggravated assault is person felony).

It follows from the facts as found by the district court that there is probable cause to believe Collins committed an aggravated assault when he turned and wielded the knife against the women. And this all flows from the earlier circumstances that show probable cause Collins provoked the women into following him up the stairwell through his verbal taunting. Under these facts, a jury could conclude the knife was a deadly weapon, and that Collins knowingly placed the women in reasonable apprehension of immediate bodily harm when he wielded it. See *State v. Schoenberger*, 216 Kan. 464, 465, 468, 532 P.2d 1085 (1975) (evidence sufficient to prove aggravated assault when defendant armed with a large knife and swiped at victim with it during a "street fracas").

Collins chose to draw his knife in the afterglow of a prior confrontation in which he was badly injured, after his continued verbal provocation of the women when he reemerged to the parking lot, and while the women were very close to him at the top of the stairs. These circumstances present an "atmosphere . . . heavily fraught with danger and . . . threatening enough to have induced apprehension on the part of [the victims] for [their] personal safety." See *State v. Warbritton*, 215 Kan. 534, 537-38, 527 P.2d 1050 (1974) (holding evidence insufficient to support aggravated assault conviction when, despite circumstances sufficient to induce fear for personal safety, victim denied being in fear and said she was not scared). And Collins' undeniable purpose in drawing the knife on the women when he did was either to use it on them or make them fear that he would.

Yet, the district court rejected K.S.A. 2019 Supp. 21-5226(a)'s application by explaining, "There is no evidence that Mr. Collins *was escaping from any felony as he headed up the stairs to his apartment*." (Emphasis added.) This, of course, was accurate, but it is incomplete. The court stopped short in fully determining the statute's application

20

to Collins' conduct "as he headed up the stairs." It failed to more thoroughly consider whether there was probable cause to believe Collins was engaged in other disqualifying conduct when he drew the knife and brandished it on the unarmed women. K.S.A. 2019 Supp. 21-5226(a) encompasses more than escaping from the commission of a felony, which is all the district court says it considered. The statute expressly includes attempting to commit, or committing, a forcible felony. The district court's shortcoming was error.

On the whole, the district court lost sight of its task at this pretrial stage. We hold the State supplied probable cause to believe Collins' killing of Kayla and wounding of Shayla were not justifiable acts of self-defense under our statutory scheme. The State's prosecution of Collins should have been permitted to continue. The decision whether to hold Collins criminally liable for his conduct, and to what degree, should be made at trial.

Judgment of the Court of Appeals reversing the district court's judgment and remanding for trial is affirmed. Judgment of the district court is reversed and the case is remanded with directions.

NUSS, C.J., not participating.
JARED B. JOHNSON, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Johnson was appointed to hear case No. 117,743 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.