No. 122,268

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DEXTER BETTS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When evaluating a motion for immunity on the basis of self-defense pursuant to K.S.A. 2020 Supp. 21-5231, a district court must consider the totality of circumstances, weigh the evidence presented without deference to the State, and determine whether the State established probable cause that a defendant's use of force was not statutorily justified.

2.

Probable cause, in the self-defense immunity setting, means the facts as found by the district court are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of a defendant's guilt despite a claim of justified use-of-force immunity.

3.

District courts follow a two-step process when making the probable cause determination on a pretrial immunity motion. At the first step, the district court makes factual findings based on stipulations from the parties and the evidence presented, along with reasonable inferences drawn from them. As part of the first step, district courts must

1

resolve evidentiary conflicts in favor of one party or the other. At the second step, district courts must make legal conclusions as to whether State has met probable cause burdens based on the factual findings.

4.

When there are no disputed material facts on a motion for immunity under K.S.A. 2020 Supp. 21-5231, an appellate court is presented with a pure question of law over which it exercises unlimited review.

5.

In a self-defense context, a two-prong test applies when a defendant uses deadly force. The first prong is subjective and requires a showing that the defendant sincerely and honestly believed it was necessary to use deadly force to protect the defendant or a third person. The second prong is objective and requires a showing that a reasonable person in the defendant's circumstances would have perceived as necessary the use of deadly force to prevent imminent death or great bodily injury to the defendant or a third person.

6.

Depending on the manner in which it behaves, a dog may be considered a deadly weapon. In this instance, applying the two-prong test to the evidence presented at the hearing—which included the officer's belief that the dog was a pit bull and that it barked and lunged at the officer—the officer was justified in using deadly force to prevent imminent death or great bodily harm as required under K.S.A. 2020 Supp. 21-5222(b).

7.

Self-defense and immunity are distinct concepts, and the distinction between the two concepts is effectively lost if a case is erroneously permitted to go to trial. Since K.S.A. 2020 Supp. 21-5231 confers true immunity, district courts evaluating claims of

immunity must perform a procedural gatekeeping function and prevent cases where defendants qualify for immunity from going to trial.

8.

To qualify for immunity under K.S.A. 2020 Supp. 21-5231, a defendant must have the ability to claim self-defense under K.S.A. 2020 Supp. 21-5222. The district court must then determine whether the use of force by the defendant seeking immunity is justified or unjustified.

9.

A defendant is only criminally liable for excessive force if self-defense is first found to exist.

10.

In the context of a claim of immunity under K.S.A. 2020 Supp. 21-5231, Kansas law permits a district court to consider a defendant's claims of self-defense regardless of whether the State has charged the defendant with conduct that constitutes an intentional, knowing, or reckless crime.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed June 18, 2021. Affirmed.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jess W. Hoeme*, of Joseph, Hollander & Craft LLC, of Wichita, and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

WALKER, J.:  The State of Kansas appeals from the district court's finding that Wichita Police Officer Dexter Betts was immune from prosecution for reckless aggravated battery by virtue of the provisions of K.S.A. 2020 Supp. 21-5231. Betts had been charged with the crime after firing two gunshots at a dog while investigating a domestic violence report. Although Betts' shots missed the dog, bullet fragments ricocheted and hit a nearby young girl in the face and foot. After careful review of the district court's ruling and several related appellate cases, we find the court conducted the proper legal analysis and therefore affirm its decision finding Betts immune from prosecution for reckless aggravated battery in the incident.

FACTS

On December 30, 2017, Wichita Police Officers Andrew Corlis and Betts responded to a report of domestic violence with a weapon at a residence in Sedgwick County. The reporting party informed police that a man was holding a gun and was potentially planning to use the gun to commit suicide. The caller, who was the man's ex-wife, also reported that the man had been choking a dog. When Corlis and Betts arrived at the scene, the man, who they believed was their suspect, was standing at the end of the driveway with his hands in the air. As they stood in the driveway, the officers saw children inside the home.

Betts and Corlis approached the man simultaneously and checked him for weapons, but they did not find any. Shortly thereafter, Sergeant Jim Crouch arrived on scene. Crouch took control of the man and told Betts and Corlis to go inside the house to check on the children and try to find the reporting party. When the officers entered the residence, they saw three children sitting in the living room. Betts' body camera showed two boys standing in front of a television and a girl sitting on the floor in front of a couch.

As they were entering the house, Crouch told Betts and Corlis he had learned that the gun was in a bedroom. Corlis then continued straight and went into a bedroom on the left, where he found the gun underneath one of the pillows. Corlis yelled to Betts, who was not in the room, that he had located the gun. Meanwhile, Betts proceeded to the right down a hallway with multiple doorways with his gun drawn. Betts opened a couple of the doors and told Corlis there was a dog in the house. Betts initially walked backwards, then turned around and walked towards the room Corlis was in. As he was walking, the dog barked and lunged at Betts, who fired two rounds from his gun at the dog. Betts then told Corlis that the dog had attacked him.

Immediately after the shots were fired, the young girl, who was sitting near where Betts had shot at the dog, began screaming about her eye. Fragments from one of the bullets had ricocheted and hit the girl in the eyebrow and toe. The officers then told the children to exit the house. Shortly thereafter, Crouch asked the officers via radio whether they were fine. Betts responded and told Crouch that they were fine and that shots had been fired at the dog after it attacked him. Crouch told them that he could not hear what they said, and Betts responded again and told Crouch that the dog had attacked him. Crouch then directed Corlis and Betts to exit the house.

In March 2018, the State charged Betts with one count of reckless aggravated battery as a result of the injuries to the girl. In July, Betts filed a pretrial motion to dismiss based on statutory immunity. In September 2018 the State responded to Betts' motion and argued he was not entitled to immunity. Nearly a year later, in August 2019, the district court held an evidentiary hearing on Betts' motion. After hearing arguments from both parties, the district court took the matter under advisement. The following month, the district court issued its ruling, finding that Betts was entitled to statutory immunity under K.S.A. 21-5231 and granting Betts' motion to dismiss the case.

The State has timely appealed from the district court's order.

ANALYSIS

On appeal, the State argues the district court erred in dismissing the case against Betts after finding that he was entitled to immunity under K.S.A. 2020 Supp. 21-5231.

In reviewing a district court's ruling on a motion to dismiss based on immunity under K.S.A. 2020 Supp. 21-5231, we apply a bifurcated standard of review of the district court's findings. Accordingly, when the district court's factual findings arise out of disputed evidence, we must determine if the findings are supported by substantial competent evidence. In doing so, we do not reweigh the evidence. The ultimate legal conclusion as to whether the facts so found arise to the level of probable cause is a legal conclusion which we review de novo. When there are no disputed material facts on a motion under K.S.A. 2020 Supp. 21-5231, we are presented with a pure question of law over which we exercise unlimited review. *State v. Hardy*, 305 Kan. 1001, 1012, 390 P.3d 30 (2017).

Kansas' self-defense immunity statute states:

"(a) A person who uses force which, subject to the provisions of K.S.A. 2020 Supp. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 2020 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.
. . . .
"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2020 Supp. 21-5231.

As evidenced by the plain language of K.S.A. 2020 Supp. 21-5231, the Legislature intended to create a "true immunity" that prevents the State from criminally prosecuting individuals who are justified in their use of force. District courts give effect to this immunity by performing a gatekeeping function that insulates a defendant who qualifies for immunity from prosecution and trial. To invoke a district court's gatekeeping function, a defendant files a motion under K.S.A. 2020 Supp. 21-5231, which then places the burden on the State to produce evidence establishing probable cause that the defendant's use of force was not statutorily justified. *State v. Phillips*, 312 Kan. 643, 655-56, 479 P.3d 176 (2021).

When evaluating a claim of self-defense immunity under K.S.A. 2020 Supp. 21-5231, "the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." *Hardy*, 305 Kan. at 1011. Recently, our Supreme Court clarified that "[i]n the self-defense immunity setting, probable cause means that the facts as found by the district court are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of defendant's guilt despite the claim of justified use-of-force immunity." *State v. Collins*, 311 Kan. 418, 426, 461 P.3d 828 (2020).

When making its probable cause determination on a pretrial immunity motion, a district court should follow a two-step process:

> "First, the district court must make findings of fact based on the stipulations of the parties and evidence presented at the hearing, along with any reasonable inferences therefrom. In this first step, 'the district court usually is squarely tasked with resolving conflicts in the evidence' in favor of one party or the other. Second, the district court must then reach a legal conclusion as to whether the State has met its probable cause burden based on its factual findings. [Citations omitted.]" *Phillips*, 312 Kan. at 565.

7

*The district court applied the correct legal standards*

Here, the district court concluded that there were no disputed material facts on Betts' motion for immunity. Moreover, neither party disputes this conclusion on appeal. As we noted previously, when there are no disputed material facts on a motion under K.S.A. 2020 Supp. 21-5231, we are presented with a pure question of law over which we exercise unlimited review. *Hardy*, 305 Kan. at 1012.

At the outset of the hearing on Betts' motion for immunity, the district court identified the correct legal standard from *Hardy*. The district court's ultimate ruling did not reiterate the exact standard, but its ruling referenced and discussed *Hardy* multiple times. As part of its ruling, the district court concluded that Betts qualified for immunity under K.S.A. 2020 Supp. 21-5231 based on self-defense as defined by K.S.A. 2020 Supp. 21-5222.

The Kansas statute defining defense of a person states:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person." K.S.A. 2020 Supp. 21-5222.

The State does not argue that the dog attacking Betts was not an unlawful force as contemplated by the self-defense statute. See K.S.A. 2020 Supp. 21-5222(a); see also *Collins*, 311 Kan. at 432 (stating that "self-defense immunity is only available when force

8

is necessary to defend against the 'imminent use of *unlawful* force'"). Accordingly, the State has waived that argument on appeal. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

Here, Betts' actions fall under K.S.A. 2020 Supp. 21-5222(b) because he used his firearm (representing "deadly force") to defend himself from the attacking dog. See K.S.A. 2020 Supp. 21-5221(a)(1), (a)(2). Our Supreme Court has held that a two-prong test applies in a case involving the use of deadly force in defense of a person:

> "The first is subjective. It requires a showing that the defendant sincerely and honestly believed deadly force was necessary to prevent imminent death or great bodily harm to the defendant or a third person. The second prong is objective. It requires a showing that a reasonable person in the defendant's circumstances would have perceived the use of deadly force as necessary to prevent imminent death or great bodily harm to the defendant or a third person." *Collins*, 311 Kan. at 427-28.

The State agrees that the district court was aware of both the subjective and objective prongs of the test and concluded that Betts' conduct met both prongs. Nonetheless, the State maintains that the district court erred under various rationales.

The State contends the district court first erred because, "despite signaling its awareness of the two-prong test, the district court appeared to ignore the objective, reasonable person portion of the test in arriving at its ruling." But that assertion is contradicted by the district court's ruling. In the transcript of the district court's bench comments following the hearing, the district court cited and discussed K.S.A. 2020 Supp. 21-5222 and its applicability to the case. After doing so, the district court then said:

> "And I recognize that self-defense requires a subjective and objective belief.
>      "Based upon the evidence, I'll find that Officer Betts reasonably believed that the use of force was necessary. And I'll also find that a reasonable person, or if it's required,

9

because of the fact that Betts is a law enforcement officer, I'll find that a reasonable law enforcement officer, along with a reasonable person, would have believed that the use of force was necessary."

Similarly, in its written order granting Betts immunity, the district court found "that a reasonable person and/or a reasonable law enforcement officer would have believed that the use of force in self-defense was necessary under the circumstances." Thus, the State's argument that the district court ignored the objective prong of the test is not supported by the record on appeal.

The State's second argument is the district court misapplied the law. To support its argument, the State cites to a portion of the district court's ruling where it stated: "Again, the dispute is not whether Betts was defending himself. He clearly was. *The State is alleging that he should not have done so under the circumstances. Maybe not.* But within the confines of the immunity statute, he was justified in the use of force in defending himself." (Emphasis added.) From this, the State argues that "[t]he italicized portion of the court's ruling demonstrates that the court improperly concluded that defendant was entitled to immunity, regardless of whether a reasonable person in defendant's circumstances would have perceived the use of deadly force in self-defense as necessary."

But the quoted language misconstrues the district court's ruling, as evidenced by the district court's comments earlier in its ruling. Before acknowledging that self-defense requires both a subjective and objective belief and finding that both tests were met, the district court explained that "[t]he evidence in this case is that Officer Betts was defending himself against what he believed to be a pit bull that was advancing and attacking him." The district court went on to say that "[t]he dispute goes as to whether he should have, even though he may have had a right to, whether he should have [defended himself], or not."

10

The language the State quotes is not evidence that the district court misapplied the objective portion of the two-prong test. Instead, the district court was restating what it had mentioned earlier. When the district court said "[m]aybe not," this appears to be a reference to whether Betts should have allowed the dog to attack him instead of defending himself. This conclusion is supported by the district court's written order, where it stated:

"The court can contemplate factual situations where the State could meet its burden to demonstrate probable cause that use of force by an officer was not justified. This is simply not one of those cases because the dispute in this case is not whether Betts was defending himself. The State is alleging that Betts should not have done so under the circumstances. An argument can be made that Officer Betts could have and/or should have allowed the dog to attack him and suffer possible injury to his person. The argument regarding whether Betts should have used force to defend himself under the circumstances is a philosophical argument subject to varied opinions. The analysis the court conducts is confined to the parameters of the statute and neither party disputes and the evidence establishes that Betts was justified in the use of force in defending himself."

The State also argues that the district court misapplied the law by asserting that, under the circumstances, a reasonable person in Betts' position could not have concluded that the use of deadly force was necessary to protect himself. However, as Betts points out, the State fails to cite any authority for the position that an objectively reasonable person could not believe it was necessary to shoot an attacking dog.

Under K.S.A. 2020 Supp. 21-5222(b), a person is justified in their use of deadly force if the "person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." In *State v. Bowers*, 239 Kan. 417, 425, 721 P.2d 268 (1986), *superseded on other grounds by statute as stated in State v. Alderson*, 299 Kan. 148, 322 P.3d 364 (2014), our Supreme Court concluded that dogs can be considered deadly weapons depending on the manner in

11

which they are used. Hence, in our opinion, the presence of a barking, lunging dog, which Officer Betts believed to be a pit bull, clearly appears to qualify as representing possible "imminent death or great bodily harm to such person" under the ambit of subsection (b).

Moreover, the State's position is undercut by its own statements. After acknowledging that Betts' body camera footage showed the dog barking and advancing towards Betts, the State goes on to say that "[w]hile this arguably would have justified the use of force, defendant's decision to use *deadly* force by firing two gunshots was not reasonable, especially given the dog's proximity to the girl who was ultimately struck by the bullet fragments." The State attempts to categorize this as a routine encounter with a dog, but the record demonstrates that Betts was entering a potentially dangerous situation. Betts was also aware that the reporting party said that the dog had been choked prior to the officers arriving at the home, which the district court cited in its ruling.

At the hearing on Betts' motion for immunity, Wichita Police Lieutenant Chris Halloran, the former rangemaster with the Wichita Police Department, also testified about different scenarios involving animals. He testified that police department policy authorized the use of force in self-defense against animals and that it was not uncommon for an officer to use their weapon against a dog. Halloran also presented training materials used by the Wichita Police Department to assist officers when making the decision to shoot or not shoot when they encounter dogs. Betts also presented stipulations the district court considered that summarized previous officer-involved dog shootings. See *Hardy*, 305 Kan. at 1012 (holding that district court's "determination of probable cause must be premised on stipulated facts or evidence, on evidence received at a hearing pursuant to the rules of evidence, or both"). Based on the evidence presented, the district court's conclusion that an objectively reasonable person could have concluded that force was necessary to defend oneself against an attacking dog was not error.

12

*The district court did not err when it allowed Betts to argue self-defense*

The State also argues, alternatively, that the district court erred by allowing Betts to argue that he was entitled to immunity based on self-defense because this court held that self-defense was not available to a defendant charged with reckless conduct. To support its claim, the State cites to *State v. Bradford*, 27 Kan. App. 2d 597, 601, 3 P.3d 104 (2000), *superseded by statute on other grounds as stated in State v. Cordray*, 277 Kan. 43, 82 P.3d 503 (2004).

In *Bradford*, the defendant was charged with reckless aggravated battery under K.S.A. 21-3414(a)(2)(A) (now codified at K.S.A. 2020 Supp. 21-5413[b][2][A]) after he hit his brother's wife with his car. On appeal, Bradford argued, among other things, that the district court erred when it failed to give a requested self-defense instruction. A panel of our court found that the district court did not err with respect to the requested instruction because "the defense of self-defense is not available against a charge of reckless conduct." 27 Kan. App. 2d at 602.

However, the State and Betts acknowledge the opinion of a different panel of our court in *State v. Wall*, No. 99,108, 2009 WL 248099, at *3-4 (Kan. App. 2009) (unpublished opinion). There, Wall was charged with reckless aggravated battery under K.S.A. 21-3414(a)(2)(A) (now codified at K.S.A. 2020 Supp. 21-5413[b][2][A]) after fracturing the victim's elbow with a pool stick during an altercation at a bar. On appeal, Wall argued that the district court erred when it did not allow him to present evidence supporting self-defense.

The *Wall* court acknowledged *Bradford* but questioned its applicability to the case because, to obtain a conviction for reckless aggravated battery, the State had to prove "that the defendant realized the imminence of danger to another person, and *unjustifiably* disregarded that danger. The requirement that the defendant act unjustifiably would seem,

13

at least in some cases, to permit evidence of self-defense or other justification for the defendant's conscious disregard of danger to another person." 2009 WL 248099, at *4. However, the panel did not explicitly resolve the issue because the district court had allowed Wall to proffer evidence of self-defense despite its indication that self-defense was inadmissible against a charge of reckless aggravated battery. 2009 WL 248099, at *4.

In a more recent decision, *State v. Edwards*, No. 118,626, 2019 WL 1575717 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1065 (2019), the court discussed the rule pronounced in *Bradford*. There, Edwards was charged with knowing aggravated battery after he kicked the victim and broke her nose and orbital bone. During trial, Edwards asked the district court to give jury instructions about lesser included offenses, which it did, and the jury later convicted Edwards of reckless aggravated battery. On appeal, Edwards argued the district court erred by not instructing the jury on self-defense.

The *Edwards* panel first concluded that there was not sufficient evidence to support a self-defense instruction. But even if it assumed, for purposes of argument, that there was enough evidence to support a self-defense instruction, the court concluded any such error would have been harmless based on the holding in *Bradford*. *Edwards*, 2019 WL 1575717, at *2-3. The court commented that "[w]hile there have been some minor changes in the Kansas statutes about self-defense and defining reckless conduct since *Bradford* was decided, the basic concepts remain the same." *Edwards*, 2019 WL 1575717, at *3. This court concluded by saying that "*Bradford* continues to accurately state Kansas law on this point." *Edwards*, 2019 WL 1575717, at *3.

In our case, the district court acknowledged precedent from *Edwards* but ruled that a claim of self-defense can be asserted against a charge of criminal recklessness. But the district court stated that its ruling on the issue "of whether self-defense can be asserted

against a criminal charge alleging reckless behavior may have been unnecessary and beside the point based upon the plain language of K.S.A. 21-5231" because the statue confers true immunity. The district court went on to explain that self-defense and immunity are distinct concepts, and the immunity statute "grants immunity from criminal prosecution whether the State claims intentional, knowing, or reckless behavior."

Betts argues the State has waived this argument because the State failed to adequately brief and argue the point on appeal. Alternatively, Betts contends that the State's claim "that statutory immunity is unavailable based on a prosecutor's selection of a particular criminal charge truly puts the cart before the horse." Betts argues that K.S.A. 2020 Supp. 21-5231 does not discuss culpable mental states, and, if a person's use of force is justified under K.S.A. 2020 Supp. 21-5222, they are immune from all criminal prosecution for their use of force, regardless of the specific criminal charge.

Both Betts and the district court rely in part on our Supreme Court's decision in *Hardy*, 305 Kan. 1001, to come to their conclusions. There, our Supreme Court distinguished between self-defense and immunity, stating that "'[s]elf-defense and immunity are clearly distinct concepts. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute because K.S.A. 2014 Supp. 21-5222 would have sufficed.'" 305 Kan. at 1009.

Our Supreme Court in *Hardy* distinguished self-defense and immunity in procedural terms. After recognizing that the two were distinct concepts, our Supreme Court went on to say: "'Perhaps most importantly, because K.S.A. 2014 Supp. 21-5231 grants immunity from arrest and prosecution rather than a mere defense to liability, "it is effectively lost if a case is erroneously permitted to go to trial."'" 305 Kan. at 1009. Later, describing the correct procedure for evaluating a claim of immunity, our Supreme Court said that true immunity "carries with it the necessity of a procedural gatekeeping function, typically exercised by a detached magistrate, who will prevent certain cases

15

from ever getting to a trial and a jury." 305 Kan. at 1010. But the quoted portions from *Hardy* did not directly address whether a defendant could claim self-defense to justify their use of force when self-defense is otherwise unavailable to them as a defense.

There are no Kansas appellate cases which are directly on point to tell us whether a defendant charged with reckless aggravated battery, as Betts was, can claim self-defense to support an immunity claim under K.S.A. 2020 Supp. 21-5231. But we think the *Wall* court's approach makes the most sense. *Wall* noted that the crime of reckless aggravated battery required the State to prove that the defendant realized the imminence of danger and then *unjustifiably* disregarded that danger. 2009 WL 248099, at *4. We agree with the *Wall* panel, and the district court in our case, that whether a defendant acted unjustifiably should permit evidence of self-defense or other justification for the defendant's conscious disregard of danger to a person, including danger to the defendant themself.

Again, the immunity statute states, in part, that "[a] person who uses force which . . . is *justified* pursuant to K.S.A. 2020 Supp. 21-5222 . . . and amendments thereto, is immune from criminal prosecution and civil action for the use of such force." (Emphasis added.) K.S.A. 2020 Supp. 21-5231(a). Thus, to qualify for immunity under K.S.A. 2020 Supp. 21-5231, a person must have the ability to claim self-defense under K.S.A. 2020 Supp. 21-5222. The key question, then, is whether the use of force used by the immunity-seeker is justified or unjustified. To put blinders on the district court in making this determination based upon an *Edwards*-like rule that a suspect is not entitled to a self-defense instruction when charged with reckless aggravated battery seems to us incompatible with the purpose of the immunity statute. To this extent we agree with the district court that the immunity statute can be invoked whether the State charges intentional, knowing, or reckless behavior.

16

Part of the difficulty in deciding the case is that the State relies on distinct, yet conflicting, arguments regarding Betts' use of force. First, the State argues that Betts is not entitled to claim self-defense because he was charged with reckless conduct. Then, it seemingly agrees that the use of force was justified but argues that the use of deadly force was unreasonable. But someone is only criminally liable for excessive force if self-defense is first found to exist. See *Bradford*, 27 Kan. App. 2d at 601. At the least, our answer is that the district court, at an immunity hearing under K.S.A. 2020 Supp. 21-5231, must carefully consider evidence of self-defense to determine if the force was or was not justifiable. If it was not, then the State should be able to defeat the motion. If it was justifiable, the immunity motion may have merit. But only by considering the self-defense evidence will the district court get the full picture.

In sum, we are satisfied that the district court here applied the proper legal tests to determine the merits of Betts' immunity motion. We also concur that the immunity statute, K.S.A. 2020 Supp. 21-5231, permits a district court to consider a defendant's claims of self-defense regardless of whether the State has charged conduct that is intentional, knowing, or reckless. After applying the correct legal test to the undisputed facts, the district court determined that Officer Betts was justified in the use of deadly force as a self-defense measure to protect himself from imminent great bodily harm represented by a barking, lunging dog he believed to be a pit bull. Under the circumstances, we can find no error in the district court's ruling.

Affirmed.