No. 126,841

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WAYNE RICHARD RIGGINS,
*Appellant*.

SYLLABUS BY THE COURT

1.

A person who uses statutorily justified force in self-defense is immune from criminal prosecution.

2.

A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person against such other's imminent use of unlawful force.

3.

The person using force must subjectively believe the use of force was necessary for self-defense, and it must objectively appear to a reasonable person in like circumstances the force used was necessary.

4.

A motion for immunity under K.S.A. 21-5231(a) is timely if it is raised before the start of trial or before the entry of a guilty or no-contest plea.

5.

When a defendant asserts immunity under K.S.A. 21-5231(a), a district court must perform its gatekeeping function by imposing the burden on the State to establish probable cause that the defendant's use of force was not statutorily justified.

6.

When the district court holds an evidentiary hearing on the defendant's immunity claim under K.S.A. 21-5231(a) and the relevant facts and evidence have not been stipulated to, the district court's decision must be based on the evidence presented at the immunity hearing.

7.

The district court's analysis of an immunity claim under K.S.A. 21-5231(a) must consider the totality of the circumstances and weigh the evidence without deference to the State to make findings of fact and resolve evidentiary conflicts. The court also must make a legal conclusion whether the State satisfied its burden to show probable cause the defendant's use of force was not statutorily justified.

8.

A jury verdict is not final until it is accepted by the trial court on the record.

Appeal from Butler District Court; CHARLES M. HART, judge. Submitted without oral argument. Opinion filed September 12, 2025. Convictions affirmed in part and reversed in part, sentences vacated, and case remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

SCHROEDER, J.: Wayne Richard Riggins timely appeals his convictions and sentences for voluntary manslaughter and aggravated battery. Riggins also argues the district court erred in denying his motion for immunity from prosecution for the charge of second-degree murder, which resulted in his voluntary manslaughter conviction. Because the State presented no evidence at the immunity hearing, we agree with Riggins and reverse his conviction and vacate his sentence for voluntary manslaughter as a lesser included crime of second-degree murder. We disagree with Riggins' claims that any individual or cumulative errors entitle him to a new trial on his aggravated battery conviction. However, we vacate his sentence for aggravated battery and remand for resentencing because his full criminal history must now be applied to this sentence.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2019, Riggins was involved in a family disturbance with his uncle's girlfriend, Dana Haynes. His uncle, Jeff Carley, quickly joined the action. Riggins, Carley, and Haynes all resided with Riggins' grandmother, Joyce Crissup, who is also Carley's mother. Riggins and Haynes did not get along. Crissup eventually told Riggins and Haynes they needed to move out and gave them three days to do so. Riggins moved out almost immediately, but Haynes did not. A few days later, Riggins went to Crissup's house to see his grandmother and to retrieve some laundry. Riggins was accompanied by his girlfriend, Joyce Batemon, who sat on a couch near the front of the house and began playing a game on her phone. Riggins greeted Crissup and headed toward the back of the house to retrieve his laundry. On his way to the laundry room, Riggins encountered Haynes near the kitchen, and the two began arguing. The argument escalated; what happened next depends on who is describing the disturbance.

3

According to Batemon, this was when "the ruckus broke out." Haynes came out of a nearby bedroom and approached Riggins in the kitchen. Haynes and Riggins exchanged words—apparently the beginning of an argument. According to Batemon, Riggins told Haynes something to the effect of, "'If you'd been a little nicer, you wouldn't have [gotten] kicked out.'" Batemon left on her own shortly after the fight started.

According to Riggins, Haynes became enraged and started attacking him. Riggins claimed Haynes attacked him with a buck knife Haynes grabbed off a nearby table. Riggins testified he was empty-handed. Carley and Crissup were both startled by the noise from the ensuing struggle. According to Carley, he came out of the bedroom and observed Riggins on top of Haynes stabbing her with a buck knife as Haynes begged for Carley's help. Carley intervened by grabbing Riggins. In response, Carley claimed Riggins swung at him with his fist or the knife, so Carley retreated into the bedroom to try to call 911. Carley was unable to do so, and Crissup ultimately called 911. Crissup similarly described seeing Riggins stabbing Haynes, but neither Crissup nor Carley saw how the altercation began.

Riggins admitted he punched Carley once in the face with a closed fist and Carley retreated back into the bedroom. Riggins claimed he continued to struggle to keep Haynes from attacking him with the knife and sustained a cut to his leg during the attack. In the process of fighting off Haynes' attack, he grabbed the hand in which she held the knife and directed it back to her, resulting in Haynes sustaining multiple stab wounds. Riggins said he took Haynes outside and left her there, at which point Riggins left the home. Riggins and Batemon both testified Riggins acted in self-defense. Haynes was taken to a hospital but died a few days later from her wounds.

Law enforcement found Riggins and arrested him. Riggins was charged with one count of intentional second-degree murder for killing Haynes, a severity level 3 person

4

felony, and one count of aggravated battery—great bodily harm, a severity level 4 person felony, for punching Carley.

At the preliminary hearing, Crissup testified she saw Riggins stabbing Haynes but she had not seen how the incident started. In fact, she had not seen Haynes at all that day prior to the altercation. Carley likewise said he saw Riggins stabbing Haynes but had not seen how the altercation started. Multiple law enforcement officers also testified at the preliminary hearing. Officer Derek Highbarger testified he responded to the scene and observed Carley outside the house bleeding from his face. Highbarger then saw Haynes propped against the gate of a privacy fence with apparent stab wounds. Highbarger spoke with Crissup, and she described the events to Highbarger consistent with her testimony. Highbarger later spoke with Batemon, who told him she believed Riggins acted in self-defense. Officer Chris Scheuber testified he located Riggins hiding in the rafters of a friend's detached garage. Upon initially encountering him, Riggins immediately stated Haynes was trying to kill him, he feared for his life, and Haynes had cut him.

At the conclusion of the preliminary hearing, the district court found probable cause to bind Riggins over for trial on second-degree murder and aggravated battery. The district court then arraigned Riggins; Riggins entered pleas of not guilty and requested a jury trial. Prior to the preliminary hearing, Riggins had filed a pro se motion for self-defense hearing; after the preliminary hearing, his attorney filed another motion for declaration of immunity under K.S.A. 21-5231 on Riggins' behalf. The district court held an evidentiary hearing. Batemon and Riggins testified on Riggins' behalf. The State presented no witnesses.

Batemon's and Riggins' testimony established that, other than Riggins and Haynes, Batemon was the only witness to their initial encounter, which began in the kitchen as a verbal argument. Riggins exchanged words with Haynes, who became angry and began attacking him. Haynes was the initial aggressor, and Batemon observed Haynes had some

object in her hand while attacking Riggins, which Riggins stated was a buck knife. Carley began attacking Riggins as well. In response, Riggins punched Carley in his face once, and Carley retreated. Batemon then left the house while Riggins and Haynes continued to struggle with one another.

Riggins feared for his life and initially tried to fend off Haynes' attacks by pushing and kicking her. He asked her to stop and pushed her to the floor, but Haynes kept attacking him. After Riggins fended off Carley, Haynes continued coming at Riggins with the knife, cutting his right thigh. Riggins tried to get control of the knife. In the process of struggling over the knife, Riggins stabbed Haynes multiple times. After stopping Haynes' attack, Riggins dragged Haynes outside, went back in the house, locked the door behind him, and left the house on foot through a different door.

The district court denied Riggins' motion, finding:

"Evidence presented at preliminary hearing was that Dana Haynes lived in the house with Ms. Crissup and Mr. Carley. Ms. Haynes was in bed prior to the attack. Dana Haynes got out of bed to go to the bathroom. It is the Court's understanding Dana did not have a weapon with her. Neither Mr.—Ms. Crissup or Mr. Carley heard any argument between Dana Haynes and the defendant before the incident. The testimony was Dana Haynes was already on the ground being stabbed by the defendant when Ms. Crissup and Mr. Carley observed the defendant stabbing Dana Haynes.

"The Court finds only superficial scratch wounds were observed on the defendant, with the treatment of the same being the placement of a 4 inch by 4 inch gauze pad.

"Under the totality of the circumstances at preliminary hearing on January 6, 2021, and today, under the totality of the circumstances, the Court finds the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified."

The case proceeded to a jury trial where Riggins was convicted of voluntary manslaughter in the heat of passion as a lesser included offense of second-degree murder and a lesser degree (severity level 7) of aggravated battery. The district court subsequently allowed Riggins to proceed pro se in the posttrial proceedings. Riggins advanced numerous arguments in various posttrial filings, including 37 claims in his motion for new trial and related filings. The district court denied Riggins an evidentiary hearing on his posttrial motions and denied them.

The district court sentenced Riggins to 233 months' imprisonment for voluntary manslaughter with a concurrent sentence of 12 months' imprisonment for aggravated battery. Additional facts are set forth as necessary.

ANALYSIS

I.       *The Evidence at the Motion for Immunity Hearing Supported Immunity from Prosecution*

*Standard of Review and Applicable Legal Principles*

When reviewing a challenge to a self-defense immunity ruling, we use a bifurcated standard of review. The district court's factual findings are reviewed for substantial competent evidence; the district court's legal conclusions from those facts are reviewed de novo. *State v. Phillips*, 312 Kan. 643, 656, 479 P.3d 176 (2021); *State v. Hardy*, 305 Kan. 1001, 1012, 390 P.3d 30 (2017).

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). When making a determination as to whether the district court's findings are supported by substantial competent evidence, "an appellate

7

court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). "[A]n appellate court . . . must not substitute its own judgment of the facts and assessment of witness credibility for that of the district court, even when it reasonably finds witness testimony 'unpersuasive.'" 317 Kan. at 55.

A person who uses statutorily justified force in self-defense "is immune from criminal prosecution . . . for the use of such force." K.S.A. 21-5231(a). "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person . . . against such other's imminent use of unlawful force." K.S.A. 21-5222(a). "A person is justified in the use of deadly force under circumstances described in [K.S.A. 21-5222(a)] if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." K.S.A. 21-5222(b). The use of force under K.S.A. 21-5222 involves both a subjective and an objective component. The person using force must subjectively believe the use of force was necessary for self-defense, and it must objectively appear to a reasonable person in like circumstances the force used was necessary. *State v. Collins*, 311 Kan. 418, 427-28, 461 P.3d 828 (2020).

When a defendant asserts immunity under K.S.A. 21-5231(a), a district court must perform its "gatekeeping function" by imposing the burden on the State to establish "probable cause that the defendant's use of force was not statutorily justified." *Phillips*, 312 Kan. at 655-56; see K.S.A. 21-5231(c). This analysis requires a two-step process. First, the district court must consider "the totality of the circumstances" and weigh the evidence "without deference to the State" to make findings of fact and resolve evidentiary conflicts. *Phillips*, 312 Kan. at 656. Second, the district court must make a legal conclusion whether the State satisfied its burden to show "'probable cause that the defendant's use of force was not statutorily justified.'" 312 Kan. at 656. If the district

8

court's factual findings would lead an ordinarily prudent person to believe it probable the defendant's use of force was unlawful, the district court must allow the prosecution to proceed. 312 Kan. at 664, 666.

*Discussion*

*The motion must be heard before trial.*

As a preliminary matter, the State asserts Riggins' motion for declaration of immunity and dismissal of count 1—second-degree murder—was untimely because it was filed more than 21 days after Riggins entered his not guilty pleas—the general deadline specified in K.S.A. 22-3208(4) for motions to dismiss. Accordingly, the State argues we should not consider the merits of Riggins' claim on appeal or, alternatively, affirm the district court as right for the wrong reason if we find the district court erred on the merits.

We observe multiple problems with the State's argument. To begin with, the statutory deadline for filing a motion to dismiss may be extended by the district court if "the grounds therefor were not known to the defendant and could not with reasonable diligence have been discovered by the defendant within the period specified herein." K.S.A. 22-3208(4). But that assumes this time limit even applies to a stand-your-ground immunity claim. Here, the State fails to cite any authority to us supporting its claim that the immunity motion was untimely.

In *State v. Jones*, 298 Kan. 324, 334, 311 P.3d 1125 (2013), our Supreme Court discussed the application of K.S.A. 22-3208(4) to claims of stand-your-ground immunity. However, the issue in *Jones* was whether such a claim could be raised for the first time on appeal. Specifically, *Jones* analyzed the language in K.S.A. 22-3208(4), which provided: "[C]onsent to trial upon a complaint, information or indictment shall constitute

9

a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint." Insofar as the *Jones* court addressed the time limitation for such a motion, it stated: "[T]he defense must be asserted before trial opens or a dispositive plea is entered. Such an assertion is a timely trigger of the State's probable cause burden." 298 Kan. at 334. The only firm time limit *Jones* established was: "A defendant who waits to invoke [statutory] immunity until appeal after conviction simply waits too long." 298 Kan. at 334.

The State raised this argument in its written response to Riggins' counsel's motion. However, the district court never made an explicit ruling that the motion was untimely and proceeded to hear Riggins' immunity motion before trial. The hearing was held via Zoom on June 2, 2021—the day after the State filed its response. But the State failed to object at the outset of the hearing when the district court allowed Riggins to call witnesses in support of his motion. The State also made no request for a continuance in order to secure the necessary witnesses to testify at the immunity hearing. At the conclusion of Riggins' and Batemon's testimony, the State argued the motion was untimely and should not be considered. But the district court denied the motion on the merits, finding: "[T]he State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified."

To the extent the district court addressed the timing of the motion, it discussed the fact the preliminary hearing was held on January 6, 2021; the pretrial conference was scheduled for June 4, 2021; and trial was scheduled to begin on June 8, 2021. The district court commented: "The defendant has had ample time to take this [matter]—this motion up prior to the eve of trial." The State did not seek clarification as to whether the district court additionally denied or would have alternatively denied the motion as untimely.

Absent an objection by a party to a lack of findings or a request for additional findings, we generally presume the district court made all the necessary findings to

10

support its conclusion. *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019). The district court here clearly had the authority under K.S.A. 22-3208(4) to allow Riggins to file the motion beyond the general 21-day time limit for a motion to dismiss. But our Supreme Court's holding in *Jones* suggests an immunity motion is timely if raised before the start of trial or the entry of a guilty or no-contest plea. 298 Kan. at 334.

Because the State carried the burden to establish Riggins' use of force was unjustified, it should have sought clarification as to whether the timing of the hearing created a procedural bar and otherwise relieved the State of its substantive burden. When the motion was not denied as untimely, the State's failure to present evidence at the motion hearing is highly problematic. Here, we find the State should not be allowed a do-over because it carried the burden of persuasion to begin with and failed to present any evidence. See *State v. Dailey*, 314 Kan. 276, 278-79, 497 P.3d 1153 (2021) ("We will not allow the State a second bite at the apple based on the district court's error. . . . It had its chance to support [its] request; if it failed, then it failed.").

It is also misleading for the State to assert the issue had been raised for the first time when Riggins' counsel filed a motion for declaration of immunity on May 28, 2021. Riggins had earlier filed a pro se motion requesting a hearing on the issue of self-defense on March 20, 2020. The State replied it could not adequately respond to Riggins' motion due to a lack of specificity, which also appears to have been disingenuous. Thus, the State had notice of his request for an immunity hearing. Riggins was not arraigned until the preliminary hearing on January 6, 2021. For reasons that are unclear from the record, no action was taken on Riggins' self-defense motion until his counsel filed a second motion on May 28, 2021, although Riggins' counsel mistakenly believed the motion had been previously filed on March 31, 2021.

We reject the State's arguments about the timeliness of the motion and will consider the issue on the merits.

11

*The issue was preserved.*

The State further asserts Riggins' argument is unpreserved because he failed to object to the district court relying on preliminary hearing testimony in resolving his immunity claim. Riggins correctly counters the State is asking us to cut "too finely" with the preservation rule—something our Supreme Court recently cautioned against in *State v. Collins*, 320 Kan. 211, 218, 564 P.3d 393 (2025). This is especially true here because Riggins "had no responsibility to carry *the State's burden* of proving" his use of force was unjustified. See 320 Kan. at 218.

Riggins timely raised his self-defense immunity claim below, which placed the burden on the State to establish his use of force was unjustified. See K.S.A. 21-5231(b), (c). How the State went about this is beyond Riggins' control. And to be clear, the State gave no indication at the outset of the immunity hearing it would not be calling witnesses; rather, it now appears the State wanted to rely on the preliminary hearing testimony. Thus, the State is essentially asking us to fault Riggins for failing to lodge an anticipatory objection to the possibility the State might fail to carry its burden at the immunity hearing. We find the State's position illogical and unpersuasive.

In any event, Riggins is correct that a prudential exception would allow the finely cut nuances of his otherwise-preserved argument to be considered for the first time on appeal. Citing *State v. Kemmerly*, 319 Kan. 91, 103, 552 P.3d 1244 (2024), Riggins asserts the point can be considered because it raises a question of law arising on proven or admitted facts and is finally determinative of the issue. We find Riggins preserved the issue, and we will consider his substantive argument on the merits.

*The immunity determination must be based on the evidence presented at the hearing.*

Turning to the merits, this issue comes down to whether the district court could rely on the preliminary hearing testimony as conflicting evidence to weigh in resolving Riggins' immunity motion. This is a novel question based on existing precedent. Ultimately, though, we find it was improper for the district court to rely on the preliminary hearing testimony as a substitute for the State presenting evidence at the hearing on the immunity motion, at least insofar as there was no agreement by the parties to submit the issue on the existing record. Without belaboring the point, Riggins is generally correct the evidence presented at the immunity hearing—his testimony and Batemon's—reflects his use of force was justified and the State failed to meet its burden to show he was not entitled to immunity from prosecution for the death of Haynes.

The parties' arguments largely turn on how our Supreme Court's discussion in *Hardy* should apply here. There, our Supreme Court had to address the proper standard for a district court resolving an immunity claim under K.S.A. 21-5231. Our Supreme Court acknowledged the statute provided no specific guidance as to what evidence the district court should look to, what type of proceeding was required, and how the district court should weigh and resolve evidentiary conflicts. *Hardy* reasoned K.S.A. 21-5231 imposed a gatekeeping duty on the district court to determine whether a defendant could even be prosecuted for his or her use of force. 305 Kan. at 1010-12. And the district court's "determination of probable cause must be premised on stipulated facts or evidence, on evidence received at a hearing pursuant to the rules of evidence, or both." 305 Kan. at 1012.

The key question here is what our Supreme Court meant by "a hearing pursuant to the rules of evidence." 305 Kan. at 1012. The State—and apparently the district court— interpreted this to mean *any* hearing held under the rules of evidence. In contrast, Riggins

13

asks us to limit *Hardy*'s application to an evidentiary hearing on the motion to dismiss. Riggins' argument is better reasoned and more logical. This is because the next sentences in *Hardy* state:

> "The timing of such a hearing—including whether it should occur before, after, or contemporaneous with the preliminary hearing—is left to the sound discretion of the district court. When exercising such discretion, district courts must remain sensitive to the fact that the matter being resolved is a question of immunity . . . ." 305 Kan. at 1012.

In other words, the hearing referenced in *Hardy* is a separate evidentiary hearing unless the district court determines both issues should be resolved at the preliminary hearing. And here, the record reflects the district court made no statement at the preliminary hearing suggesting it intended to resolve any matters related to immunity from prosecution at that time.

It is well-settled that "the State bears the burden of establishing proof that the force was not justified as part of the probable cause determination required under [K.S.A. 21-5231(c)]." *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013). This means the State has the burden of production in disproving a defendant's claim of statutory immunity. 296 Kan. at 844-45. The burden of production is not the same thing as the burden of proof. The burden of production means a party must come forward *with evidence* relevant to the issue. That does not necessarily mean that party also bears the burden of proof for that same issue. See *State v. Hughes*, 290 Kan. 159, 171-72, 224 P.3d 1149 (2010) (when defendant filed objection to criminal history, State had burden to produce evidence; burden to produce evidence could then shift to defendant, but burden to prove defendant's criminal history could not). However, in the context of stand-your-ground immunity, the State has the burden of production *and* the burden of proof to show the defendant's use of force was unjustified. *Hardy*, 305 Kan. at 1011; *Ultreras*, 296 Kan. at 844-45.

14

In making this determination, "the district court must consider the totality of the circumstances, weigh *the evidence before it* without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." (Emphasis added.) *Hardy*, 305 Kan. at 1011. Where the State fails to meet its burden to *produce* evidence, it naturally follows there is no evidence *before* the district court to support a determination that the State carried its burden. See *Hardy*, 305 Kan. at 1011; *Ultreras*, 296 Kan. at 844-45. Accordingly, we agree with Riggins that the State failed to carry its burden to produce evidence at the immunity hearing and, therefore, failed to carry its burden of proof.

As our Supreme Court noted in *Hardy*, a hearing to resolve a claim of immunity could occur before, after, or contemporaneously with the preliminary hearing. 305 Kan. at 1012. However, *Hardy* illustrated the vastly different standards applicable to the probable cause determination for a preliminary hearing as opposed to an immunity hearing. In fact, because the parties agreed to submit the immunity issue on the existing record in *Hardy*, the exact same evidence caused the district court to conclude there was probable cause to bind Hardy over for trial, but the State failed to meet its burden to show Hardy's use of force was unjustified. 305 Kan. at 1004-05.

These disparate conclusions are the result of how the district court must view the evidence in each context. In a preliminary hearing, the district court must determine whether there is probable cause to believe (1) a crime has been committed, and (2) the defendant committed it. In doing so, the district court cannot rely on its own credibility determinations or weighing of the evidence. Conflicting evidence is resolved in favor of the State. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012). In contrast, the explicit directive in *Hardy* is that the district court must make credibility determinations and resolve conflicting evidence to perform its gatekeeping function in ruling on an immunity motion. In doing so, the district court *does not* give deference to the State's evidence. 305 Kan. at 1011.

These differing standards show why, absent an agreement by the parties, the State's reliance on the preliminary hearing testimony is problematic. A defendant may not be arraigned until after the district court makes a probable cause determination at the preliminary hearing. As the State itself is apt to point out, the *general* time limit for filing a motion to dismiss is triggered once the defendant is arraigned. See K.S.A. 22-3208(4). Thus, how a defendant may or may not go about testing the State's evidence or presenting his or her own evidence at the preliminary hearing could quite justifiably vary from how the defendant would proceed in a separate hearing on a motion for immunity. Unless the State wholly fails to present evidence at the preliminary hearing reflecting a crime was committed and the defendant committed that crime, there is little point in any contradictory arguments or evidence the defendant might raise or present. See *Washington*, 293 Kan. at 733-34. Therefore, reasonable defense counsel may see it as sound strategy not to cross-examine witnesses on certain matters at the preliminary hearing when doing so would be unavailing.

This illustrates why "a hearing pursuant to the rules of evidence" should not be construed to mean prior testimony from the preliminary hearing can later be used at a separate hearing on the defendant's immunity motion. See *Hardy*, 305 Kan. at 1012. If the district court exercises its discretion to resolve both issues contemporaneously, and parties are aware of the same, it is reasonable, fair, and prudent for the defendant to tailor his or her presentation of evidence and cross-examination of the State's witnesses differently. Similarly, if, as occurred in *Hardy*, the parties agreed to submit the issue on the existing record without further hearing, i.e., on *stipulated* facts or evidence, the State should not be required to produce additional evidence. 305 Kan. at 1004-05, 1012.

In contrast, when, as occurred here, the facts are disputed and there is no agreement by the parties, the State must meet its burden of production to meaningfully vindicate a defendant's statutory right under K.S.A. 21-5231. *Hardy*, 305 Kan. at 1011; *Ultreras*, 296 Kan. at 844-45. After all, this is the same as would be required if a

defendant requested an immunity hearing *before* the preliminary hearing—something our Supreme Court acknowledged could occur in *Hardy*, 305 Kan. at 1012.

Here, it is especially troubling for the State to rely on the preliminary hearing testimony because there was no agreement among the parties that the evidence presented therein could later be used at another hearing if Riggins filed an immunity motion. The State's desire to rely on the evidence from the preliminary hearing that was not specifically tested or rebutted for purposes of the immunity hearing is problematic. And Riggins was unable to meaningfully test that evidence at the immunity hearing because the State failed to call any witnesses, let alone those whose preliminary hearing testimony it argued should be considered by the district court.

Here, the district court explicitly acknowledged nothing had been stipulated to. In other words, there were no "*stipulated* facts or evidence" for the district court to rely on here. (Emphasis added.) *Hardy*, 305 Kan. at 1012. Accordingly, the issue should have been resolved "on evidence received at a hearing pursuant to the rules of evidence," which, as previously explained, means the evidentiary hearing *on the motion for immunity*. See *Hardy*, 305 Kan. at 1012. Nevertheless, the district court resolved this perceived conflict with evidence taken in a different proceeding, for a different purpose, subject to a very different standard of review, and without meaningful testing by Riggins in the context of his immunity motion. Moreover, although the parties disagreed about the facts of the case overall, the evidence *actually presented at the immunity hearing* did not meet the State's burden to show Riggins' use of force was unjustified.

Batemon's testimony reflected that, other than Riggins and Haynes themselves, she was the only witness to their initial encounter, which began in the kitchen as a verbal argument. Batemon said the words Riggins exchanged with Haynes made Haynes angry and Haynes began attacking Riggins aggressively. According to Batemon, Haynes was the initial aggressor and had some object in her hand while attacking Riggins. Batemon

further testified Carley began attacking Riggins as well. Batemon observed Riggins punch Carley in his face once, and Carley retreated. At that point, Batemon saw Haynes was still attacking Riggins, but Batemon left the house while Riggins and Haynes continued to struggle with one another.

Riggins' testimony was generally consistent with Batemon's. Riggins testified he was lawfully present at Crissup's house and was there to see his grandmother and to pick up his laundry. He encountered Haynes near the kitchen as he was headed to the laundry room. The two exchanged words, and Haynes became angry when Riggins told her she also needed to vacate Crissup's house. According to Riggins, Haynes charged at him with an object in her hand, which Riggins said was a knife. Riggins feared for his life and initially tried to fend off Haynes' attacks by pushing and kicking her. He asked her to stop and pushed her to the floor, but Haynes kept attacking him. Carley then intervened and grabbed Riggins, at which point both Carley and Haynes were attacking him. Riggins punched Carley in the face one time with a closed fist, and Carley retreated. However, Haynes continued coming at Riggins with the knife.

Haynes sliced at Riggins' legs, cutting his right thigh. Riggins was still afraid for his life and tried to get control of the knife. In the process of struggling over the knife, Riggins stabbed Haynes multiple times. After defending himself and stopping Haynes' attack, Riggins dragged Haynes outside, went back in the house, locked the door behind him, and left the house on foot through a different door.

Although the State does not seem to argue the evidence presented at the immunity hearing was sufficient on its own, the State asserts:

18

"[T]he evidence—from the immunity hearing alone—supports that Riggins carried a knife with him into Crissup's house, that he told Haynes, 'If you'd been nicer, you wouldn't have been kicked out of the house,' that multiple witnesses saw Haynes on the ground and Riggins stabbing her, and finally—Riggins ran away."

The State seems to be referring to its cross-examination of Riggins and Batemon, but the State's questions on cross-examination were couched in references to other witnesses' testimony from the preliminary hearing. In effect, the State confronted Riggins and Batemon with potential inconsistencies reflected by evidence that should never have been considered. But nothing in Riggins' or Batemon's responses to the State's questions demonstrated any inconsistency from their testimony on direct examination. Their answers did not change, regardless of how the State attempted to elicit contradictory testimony. The State's questions are not evidence; the witnesses' answers are.

The evidence presented at the hearing on Riggins' motion for declaration of immunity from prosecution established Riggins subjectively believed he needed to use force to defend himself, and, in the context of the testimony at the immunity hearing, Riggins' use of force was objectively reasonable. See *Collins*, 311 Kan. at 428. The State presented no evidence at the hearing and failed to meet its burden of demonstrating Riggins' use of force was unjustified. The preliminary hearing testimony cannot meet the State's burden if it was improper to consider. The district court's determination must be based on substantial competent evidence. Regardless of how substantial it may be, evidence not properly before the district court is not competent evidence.

We agree with Riggins that the State failed to meet its burden of production and persuasion at the immunity hearing. Accordingly, the State should not have been allowed to proceed in prosecuting the second-degree murder charge that led to Riggins' conviction for the lesser included offense of voluntary manslaughter; thus, we reverse his conviction and vacate the sentence. In light of this, we find Riggins' arguments regarding jury

19

instruction error and whether the State met its burden to overcome his affirmative defense at trial are moot. However, we will consider some of his remaining arguments as they relate to his aggravated battery conviction.

II.    *Riggins Did Not Properly Waive His Right to Posttrial Counsel*

After the jury returned its verdict, Riggins asked the district court to allow him to proceed pro se for the remainder of the posttrial proceedings. The district court granted Riggins' request. Riggins now argues the district court failed to obtain a knowing and intelligent waiver of his right to counsel. As Riggins notes in his brief, the district court engaged in the following colloquy before allowing Riggins to represent himself going forward:

> "THE COURT:  Subsequently, the Court has taken over an hour of time in discussion of how Mr. Riggins wishes to proceed, and it's the Court's understanding that Mr. Riggins, at this time, does wish to represent himself going forward on a pro se basis and that he does wish to have [trial counsel] remain as standby counsel for the purposes only of answering any questions and inquiry that he may have in regards to criminal procedure.

> "Now, Mr. Riggins, is that correct or not?

> "[RIGGINS]:  That is accurate. That is correct.

> "THE COURT:  And, Mr. Riggins, I do wish to advise and I need to advise you at this time that you do have the right to counsel in going forward from this point. Do you understand that?

> "[RIGGINS]:  Yes.

"THE COURT:  Do you understand that I'm advising that this may not be in your best interest to represent yourself, and it may actually be in your best interest to be represented by counsel?

"Do you understand that?

"[RIGGINS]:  I understand that.

"THE COURT:  And are you stating to the Court that you are knowingly and voluntarily waiving your right to counsel in going forward?

"[RIGGINS]:  I am waiving my right to counsel, and I'm going pro se under my Sixth Amendment right.

"THE COURT:  And have there been any promises or threats made to you which have influenced you to proceed in representing yourself on a pro se basis?

"[RIGGINS]:  No, Your Honor.

"THE COURT:  Very well. The Court does find that you are knowingly and voluntarily waiving your right to counsel going forward, and the Court does accept the same."

Riggins argues the colloquy was insufficient because it "omitted any reference to the consequences of the waiver, and nothing in it provided any indication that Riggins grasped the nature of the upcoming proceedings or the range of punishment. More importantly, the colloquy omitted any reference to the dangers and disadvantages of self-representation."

Riggins relies on *State v. Lowe*, 18 Kan. App. 2d 72, 847 P.2d 1334 (1993), where the panel delineated the various concepts a defendant should be informed of when

invoking the right to self-representation. One of those concepts, the dangers and disadvantages of self-representation, includes:

"'(a) The law provides for numerous pretrial motions available to the defendant, which are of a technical nature, the advantage of which the defendant would lose if allowed to represent himself or herself;

"'(b) The defendant's vocabulary may impede clear communication with the court and opposing counsel;

"'(c) Judges will not act on behalf of a defendant in asserting objections or making appropriate motions where ordinarily it is the duty of counsel to call such matters to the court's attention;

"'(d) The district attorney will not assist in the defense of the case;

"'(e) The rules of law are highly technical and will not be set aside in view of his or her status;

"'(f) A defendant may waive constitutional, statutory, and common law rights unknowingly; [and]

"'(g) If the defendant is in custody, it is difficult for a defendant in custody to locate witnesses, interview them, prepare subpoenas, and have them served.'" 18 Kan. App. 2d at 77.

Riggins is correct the district court here failed to properly discuss the dangers and disadvantages of self-representation. Riggins argues this failure amounted to structural error and we should reverse and remand for posttrial proceedings with proper representation. We are not persuaded by Riggins' briefing of this point as his argument is conclusory. Riggins fails to explain how inadequate posttrial representation presents the same concerns as inadequate representation at trial. The caselaw regarding structural

22

error focuses on the uncertainty of the overall effect of an error on the result at trial. As our Supreme Court explained in *State v. Cantu*, 318 Kan. 759, 769, 547 P.3d 477 (2024), structural errors refer to "a limited category of errors which violate constitutional rights 'so basic to a fair trial that their infraction can never be treated as harmless error.'" *Cantu* further explained:

> "In addition to impairing the framework of the trial itself, the consequences of structural errors are generally difficult to assess and therefore unamenable to . . . harmless-error review. When the prejudicial effects of a constitutional violation are unquantifiable and indeterminate, any assessment of the effect on the outcome of trial becomes a purely speculative endeavor." 318 Kan. at 770.

Because Riggins fails to meaningfully explain how this also applies to posttrial proceedings or show his claim is supported by any caselaw, we deem the point waived and abandoned due to improper briefing and decline to decide whether, or to what extent, the error was prejudicial. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

III.    *Riggins Suffered No Prejudice by the Denial of His Motion for New Trial*

Riggins argues the district court erred in denying his motion for new trial. He asserts the district court should have at least held an evidentiary hearing before ruling on the motion. "The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 22-3501(1). We review the district court's decision on a motion for new trial for an abuse of discretion. *State v. Davidson*, 315 Kan. 725, 728, 510 P.3d 701 (2022). "A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable . . . ; (2) it is based on an error of law . . . ; or (3) it is based on an error of fact." *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). As the party asserting the district court abused its discretion, Riggins bears the burden of showing such abuse of discretion. See *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022). We believe he has.

23

Riggins advanced numerous claims in his motion(s) for new trial and related filings. The district court ultimately denied relief on all 37 of the claims it discerned from Riggins' various filings. On appeal, Riggins limits his argument to three claims: (1) His trial counsel was ineffective for not seeking immunity from prosecution on the aggravated battery charge; (2) his trial counsel was ineffective for failing to request a jury instruction on imperfect self-defense involuntary manslaughter; and (3) his trial counsel was ineffective for failing to ask to see the verdict forms or poll the jury when it initially returned an improper verdict. We will not address Riggins' second point because it is moot.

We question why Riggins' counsel did not seek immunity from prosecution on the aggravated battery charge. Counsel's inaction appears to lack logic or sound strategy to assert Riggins' use of deadly force against Haynes was lawful but fail to assert Riggins' use of nondeadly force against Carley was also lawful. Given the evidence—or lack of evidence—at the immunity hearing, Riggins would have been entitled to immunity for aggravated battery. But as our Supreme Court held in *Jones*, if the immunity claim was not asserted before trial and the jury rejected the defendant's affirmative defense, the jury's verdict demonstrates "the State has already borne an evidentiary burden far higher than the probable cause burden imposed upon it by the Stand-Your-Ground statute." 298 Kan. at 334. We observe no available remedy for Riggins' first contention.

We turn to address the improperly completed jury verdict. The jury was brought back into the courtroom after handing its initial verdict form to the bailiff. The district court then addressed the jury (with the parties present) as follows:

> "Members of the jury, I had the verdict form taken by our bailiff and brought for a viewing by just the Court, by my eyes only, but I had counsel for both the State and defendant present in the room while I reviewed the verdict form.

24

"You have—in the verdict form, you have gone through each particular count and each lesser included, and you have marked those accordingly. Um, what you need to do is focus in regards to the, uh, count that you are looking at, and you need to ignore the other, uh—the other options, so to speak. And what I'm going to do is go ahead and send you out. . . .

. . . .

". . . I'm gonna send the jury back out with a new verdict form to review, and then subsequently when you have had a chance to deliberate, then I'm going to do the same protocol and procedure and view the same and see if it comports with, uh, the jury returning a verdict in the case."

Riggins is correct his trial counsel did not object, request to see the verdict form, or ask to poll the jury before it was sent back to deliberate with a new verdict form. The rejected verdict form itself is not in the record, and there is not any meaningful explanation in the record why it was rejected. However, we note several other courts have found situations like this ultimately harmless. See *Stevens Markets, Inc. v. Markantonatos*, 189 So. 2d 624, 626 (Fla. 1966) ("It is established that when a verdict is returned for correction the jury may alter it in substance or submit a different verdict. Until a verdict is accepted by the court and recorded the entire cause remains in the hands of the jury."); *Eley v. Moris*, 478 So. 2d 1100, 1103 (Fla. Dist. Ct. App. 1985) ("[A]bsent other circumstances, the mere fact that a jury corrects an improperly completed verdict form upon instruction is not a sufficient basis to order a new trial because of jury confusion."); *People v. Wilson*, 51 Ill. 2d 302, 309, 281 N.E.2d 626 (1972) ("The finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record."); *Henderson v. State*, No. CA CR 90-246, 1991 WL 178079, at *2 (Ark. Ct. App. 1991) (unpublished opinion) ("When it became obvious from the improperly filled out verdict form and the statements of the foreman that the jury was confused regarding the sentencing, the judge offered explanatory remarks and sent the jury back for further deliberations, which was completely proper."); *People v. Hernandez*,

No. B242869, 2013 WL 4409704, at *11 (Cal. Ct. App. 2013) (unpublished opinion) ("Hernandez then asserted the jury was not competent to decide his fate because the foreperson initially improperly filled out the verdict forms. We disagree. Providing the jury with new forms, both 'guilty' and 'not guilty,' and re-instructing the jury on how those forms should be filled out did not amount to error.").

We likewise conclude a jury verdict is not final until it is accepted by the trial court on the record. Here, it was not error for the district court to send the jury back to continue its deliberations. Riggins could not have been prejudiced by the rejected jury verdict form, as the jury was sent back with a new verdict form and properly instructed on how to indicate its verdict on the form.

IV.    *Riggins Is Not Entitled to a New Trial Based on Cumulative Error*

Riggins argues that, even if none of the errors identified in his brief are individually reversible, cumulative error entitles him to a new trial. Cumulative trial errors, when considered together,

> "may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. If any of the errors being aggregated are constitutional, their cumulative effect must be harmless beyond a reasonable doubt. [Citations omitted.]" *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

In light of our ruling on Issue I, any claims relevant to Riggins' voluntary manslaughter conviction are moot. With regard to Riggins' aggravated battery conviction, he has essentially identified only one meaningful error—his waiver of posttrial counsel—

26

the individual effect of which cannot be fully assessed and was not properly briefed. We are unpersuaded Riggins advanced any claims for which relief can be granted in relation to his motion for new trial. Accordingly, we find Riggins is not entitled to a new trial based on cumulative error.

We reverse Riggins' conviction for voluntary manslaughter and vacate his sentence for that offense. We affirm Riggins' conviction for severity level 7 aggravated battery but vacate his sentence and remand for resentencing because Riggins' full criminal history was applied to his sentence for voluntary manslaughter, not his sentence for aggravated battery. See K.S.A. 21-6819(b)(5) ("In the event a conviction designated as the primary crime in a multiple conviction case is reversed on appeal, the appellate court shall remand the multiple conviction case for resentencing.").

Convictions affirmed in part and reversed in part, sentences vacated, and case remanded with directions.